```
 1                IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA
 2              BEFORE THE HONORABLE WILLIAM B. SHUBB

 3   UNITED STATES OF AMERICA,

 4              Plaintiff,
     vs.                              Sacramento, California
 5                                    No. 2:19-CR-00126
     JAZIZ CEA,                       Tuesday, January 21, 2020
 6                                    9:08 a.m.
                Defendant.
 7   _____/

 8

 9                           --oOo--

10              REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                           --oOo--

12
     APPEARANCES:
13
     For the Government:          U.S. ATTORNEY'S OFFICE
14                                ROSANNE L. RUST
                                  Assistant U.S. Attorney
15                                CHRISTINA McCALL
                                  Assistant U.S. Attorney
16                                501 I Street, Suite 10-100
                                  Sacramento, CA  95814
17
     For the Defendant:           OFFICE OF THE FEDERAL DEFENDER
18                                DOUGLAS J. BEEVERS
                                  Assistant Federal Defender
19                                801 I Street, 3rd Floor
                                  Sacramento, CA  95814
20
     Official Reporter:           KACY PARKER BARAJAS
21                                CSR No. 10915, RMR, CRR, CRC
                                  501 I Street
22                                Sacramento, CA  95814
                                  kbarajas.csr@gmail.com
23


24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1          SACRAMENTO, CALIFORNIA, TUESDAY, JANUARY 21, 2020, 9:08 AM

2                                  --oOo--

3               THE CLERK:  Item 2, criminal 19-126-MCE, United States

4     versus Jaziz Cea.

5               MR. BEEVERS:  Good morning, your Honor.  Doug Beevers

6     for Jaziz Cea who is present in custody ready to proceed.

7               MS. RUST:  Good morning, your Honor.  Rosanne Rust and

8     Christina McCall on behalf of the United States.

9               THE COURT:  I understand that Mr. Cea wishes to change

10    his plea to the charge in count 2; is that correct?

11              MR. BEEVERS:  Yes, your Honor.

12              THE COURT:  Do you have the plea agreement?

13              MR. BEEVERS:  No, your Honor.  It will be an open

14    plea, and we would proceed to trial on the other charge.

15              THE COURT:  I recall that we were going to proceed to

16    trial on the other charge.  I didn't know there was no plea

17    agreement on count 2.  So we'll just proceed then with the

18    plea.

19              Would you administer the oath to Mr. Cea, please.

20              THE CLERK:  Yes, your Honor.

21              Please raise your right hand.

22              (Whereupon the oath was administered.)

23              THE DEFENDANT:  Yes.

24              THE CLERK:  Thank you.

25              THE COURT:  Mr. Cea, I want to ask you some questions

1  now bearing upon your decision to enter a plea of guilty to the
2  charge in count 2 of the Indictment in your case.  Do you
3  understand that you're now under oath, and if you should answer
4  any question that I ask falsely, your answers could later be
5  used against you in another prosecution for perjury or for
6  making a false statement?
7            THE DEFENDANT:  Yes, your Honor.
8            THE COURT:  What is your full, correct name?
9            THE DEFENDANT:  Jaziz Jesahias Cea, your Honor.
10           THE COURT:  Middle name is Jesahias.  How do you spell
11 it?
12           THE DEFENDANT:  Is J-e-s-a-h-i-a-s.
13           THE COURT:  And how old are you?
14           THE DEFENDANT:  I am 21, your Honor.
15           THE COURT:  How far did you go in school?
16           THE DEFENDANT:  High school diploma, your Honor.
17           THE COURT:  Have you ever been treated for mental
18 illness of any kind?
19           THE DEFENDANT:  Only once or twice, but it was only --
20 they were only short counseling.  That was it.  Nothing else.
21           THE COURT:  When was that?
22           THE DEFENDANT:  I believe it was when I was 14 or 15.
23           THE COURT:  And you received counseling?
24           THE DEFENDANT:  Only like two -- only two visits, I
25 believe.

```
 1                THE COURT:  From some kind of a professional?
 2                THE DEFENDANT:  Some sort of psychiatrist, yes.
 3                THE COURT:  All right.  And what was the diagnosis, if
 4    you recall?
 5                THE DEFENDANT:  I do not know.  I was diagnosed with
 6    ADHD back when I was around eight years old.
 7                THE COURT:  And did you receive any medication of any
 8    kind for that?
 9                THE DEFENDANT:  I have Rohypnol.
10                THE COURT:  How do you spell that?
11                THE DEFENDANT:  I do not know.
12                THE COURT:  How do you pronounce it?
13                THE DEFENDANT:  Rohypnol.
14                THE COURT:  Rohypnol?
15                THE DEFENDANT:  Uh-huh.
16                THE COURT:  What does it do?
17                THE DEFENDANT:  So it's basically a medicine that is
18    treated to help me sleep because I also have insomnia as
19    well.
20                THE COURT:  So is the medication for insomnia, or is
21    that for some other mental condition?
22                THE DEFENDANT:  It's for both.
23                THE COURT:  What are the effects of that medication
24    when you take it?
25                THE DEFENDANT:  It makes me drowsy, and it's supposed
```

1   to help me focus when I was at school.  But it turns out it was
2   also making me overweight, so I was -- so I had to be checked
3   to make sure I was not diabetic.
4           THE COURT:  All right.  Well, it's hard to focus when
5   you're drowsy, so tell me what the medication does.
6           THE DEFENDANT:  So basically I would take it at night
7   to make sure I go to sleep.  And in the morning it says --
8   well, at least from what my doctor says, it should help me
9   focus in the morning.
10          THE COURT:  I see.  So you're more alert when you wake
11  up?
12          THE DEFENDANT:  Yes, your Honor.
13          THE COURT:  All right.  Does it have any side effects?
14          THE DEFENDANT:  Drowsiness and overweight and it also
15  had problems with a little bit of my aggression as well.
16          THE COURT:  I see.  So when was the last time you had
17  any of that medication?
18          THE DEFENDANT:  I believe when I was -- after 14 or
19  15.
20          THE COURT:  I see.  So have you had any drugs or
21  medication for your mental condition or your insomnia since
22  then?
23          THE DEFENDANT:  Yes.  I have been taking it like for
24  the past few months.  It's an antipsychotic pill.
25          THE COURT:  Antipsychotic, who prescribed that?

1           THE DEFENDANT:  One of the nurses or the doctors here
2   at the jail.
3           THE COURT:  What's that medication?
4           THE DEFENDANT:  It's for my paranoia and for my
5   insomnia.
6           THE COURT:  Do you know the name of it?
7           THE DEFENDANT:  I have no idea, your Honor.
8           THE COURT:  Mr. Beevers, do you know what that
9   medication is?
10          MR. BEEVERS:  I don't know exactly the medication.
11          THE COURT:  It's for insomnia and paranoia?
12          THE DEFENDANT:  Yes.  And it's also supposed to help
13  with my anxiety as well since I have hyper-induced anxiety as
14  well, your Honor.
15          THE COURT:  Do you still have insomnia?
16          THE DEFENDANT:  A little bit but it seems to be going
17  away.  So yes, I've been seeing the psychiatrist over here
18  for -- just for the past month and a half.
19          THE COURT:  So that's in the jail?
20          THE DEFENDANT:  Yes, in the jail, your Honor.
21          THE COURT:  That psychiatrist has told you you have
22  paranoia and anxiety?
23          THE DEFENDANT:  Yes.  And so what she is prescribing
24  me, she is giving me exercises of what -- to draw what I see
25  and what I hear and all that, your Honor.

1   THE COURT:  Does this medication that you're taking in
2   the jail have any side effects?
3   THE DEFENDANT:  Not that -- not that -- just the
4   drowsiness, but I believe that's it, your Honor.
5   THE COURT:  How do you feel this morning?
6   THE DEFENDANT:  I feel blessed, your Honor.
7   THE COURT:  Do you feel like you're in full possession
8   of your faculties?
9   THE DEFENDANT:  Could you explain, your Honor.
10  THE COURT:  Yeah.  Can you think clearly?  Can you see
11  clearly?
12  THE DEFENDANT:  Yes.
13  THE COURT:  Can you speak clearly, hear and so forth?
14  THE DEFENDANT:  Yes, your Honor.
15  THE COURT:  Do you have any anxiety this morning?
16  THE DEFENDANT:  Of course I do, your Honor.
17  THE COURT:  Everybody who comes here does.  Is your
18  anxiety preventing you from thinking clearly?
19  THE DEFENDANT:  I don't think so, your Honor, but --
20  THE COURT:  Do you think you're thinking clearly
21  today?
22  THE DEFENDANT:  I hope.  Hopefully I do, your Honor.
23  I believe so.
24  THE COURT:  What are the symptoms of the paranoia that
25  you have?

1      THE DEFENDANT: Well, it's because since -- when I was
2  out there I was -- what I was doing was I was being a watchdog
3  which was trying to catch criminals using the dark web. But
4  since that, since I was doing that, I've noticed that people
5  were following me, so I've been very paranoid. I couldn't
6  sleep at night, you know. Like if you asked my father, he had
7  to stay up with me at night because I was staying up almost
8  till midnight before I could go to sleep.
9      Like I said, I could never -- every time I would go
10 out, I was always paranoid. If you ask my girlfriend, she
11 knows how paranoid I was trying to always look out the window
12 because I was always -- I was just afraid for my life.
13     THE COURT: So now do you think that people are
14 actually following you, or do you think that was your paranoia?
15     THE DEFENDANT: I have no idea, your Honor.
16     THE COURT: Well, what do you think?
17     THE DEFENDANT: I believe people were following me.
18     THE COURT: Do you think they're still following you?
19     THE DEFENDANT: I don't know, your Honor. I do not
20 know.
21     THE COURT: Okay. Does the medication help you with
22 the feeling that people are following you?
23     THE DEFENDANT: Yes. It's supposed to.
24     THE COURT: Well, does it?
25     THE DEFENDANT: I'm trying -- I'm going to a

1  borderline between if it was fiction or reality, your Honor.
2  I'm still contemplating if that was really what happened.
3          THE COURT:  Does that feeling that you have bother you
4  here today?
5          THE DEFENDANT:  Yes, your Honor, it does.  Because it
6  feels like I -- for this entire time I was here, I've been
7  treated like a criminal, and I know because I'm -- but I'm not.
8  That's not me, your Honor.  I was -- I got caught up in this
9  situation.  I went too far.  And I personally did not know that
10 I was -- I could get in trouble for trying to do this thing I
11 was trying to do, which was trying to, you know, catch
12 criminals.  But I was not commissioned by the federal
13 department or nothing.
14         THE COURT:  Well, if I accept your plea to count 2,
15 you're going to admit to a crime; you understand that?
16         THE DEFENDANT:  Admit to a crime?
17         THE COURT:  You're going to admit to a crime if I
18 accept your plea to count 2; do you understand that?
19         THE DEFENDANT:  Yes, your Honor.
20         THE COURT:  Do you intend to admit to the crime
21 charged in count 2?
22         THE DEFENDANT:  Yes, your Honor.  But if I may
23 clarify.
24         MR. BEEVERS:  Well, perhaps we would do explanations
25 later for the sentencing.

1           THE COURT:  Right.  I'm trying to find out your state
2   of mind right now.  Are you telling me you're going to admit to
3   the charge in count 2 because you're guilty, or are you telling
4   me that you're going to admit because somebody is putting
5   pressure on you or because somebody is following you or some
6   other reason?
7           THE DEFENDANT:  It's -- it's because -- yes, it is
8   pressure.  And I don't know what would go on if I was out
9   there, your Honor, because I have no idea if this person would
10  still be following me right now.
11          THE COURT:  So are you pleading guilty to this charge
12  because you're afraid of somebody on the outside?
13          THE DEFENDANT:  Yes, your Honor.
14          THE COURT:  Mr. Beevers, I'd like to know a little bit
15  more about this mental condition and the medication that he's
16  taking as well as the diagnosis that he's telling me has been
17  made over there in the jail.
18          MR. BEEVERS:  I think that makes sense, your Honor.
19  It appears when I meet with him that the medication's extremely
20  effective, but I'm not sure whether it's consistently
21  effective.  It's been -- we've had -- because I believe
22  sometimes those conditions can fluctuate, and it may be that
23  he's more stressed today than he was last week; and it may be
24  something that I need to talk to the psychiatrist about.
25          THE COURT:  We can go ahead with the trial whether the

1     Court takes the plea or not, can't we?
2                 MR. BEEVERS:  Right.
3                 THE COURT:  The worst that would happen would be he
4     would go to trial on count 2, and the jury would find him
5     guilty, right?  That would be the worst that could happen on
6     count 2.
7                 MR. BEEVERS:  Right.
8                 THE COURT:  The problem the Court is facing is that
9     where a defendant wishes to plead guilty and there's no reason
10    not to accept the plea, the Court has to accept the plea.
11                MR. BEEVERS:  Right.
12                THE COURT:  But where there is doubt, the Court needs
13    to explore the voluntariness of the plea and the defendant's
14    state of mind.  Nothing has been said today that causes the
15    Court to question his competency to proceed to trial.  The only
16    thing that has been discussed that causes the Court concern is
17    his voluntariness of the plea.
18                I could go into it further with him now, but I'm
19    afraid that if I do, we'll be talking about things that are the
20    subject of the counts that are going to trial as well, and I
21    don't want to put him in that position.
22                MR. BEEVERS:  I agree, your Honor.  And I think
23    there's no particular hurry.  We could come back in a week or
24    two after we've had more time to investigate this.  There's
25    no -- if he were to plead two or three weeks before trial on

Case 2:19-cr-00126-TLN-CKD   Document 27   Filed 01/24/20   Page 12 of 14
12

1  this, it wouldn't make a difference.
2          THE COURT:  All right.  Nothing we do is going to
3  change the trial date, right?
4          MR. BEEVERS:  No.
5          THE COURT:  Okay.  Agreed?
6          MS. RUST:  Yes.
7          THE COURT:  We're still set for trial on March 17th.
8          MS. RUST:  March 17th, your Honor.
9          THE COURT:  What else would you do if we put this over
10 a week or two?
11         MR. BEEVERS:  I would try to speak with the
12 psychiatrist, see if we need to get an independent evaluation
13 to see whether there is inconsistent competency and whether --
14 I suppose whether there may have been mental defect at a time
15 of a trial or anything like that, but that's a very high
16 burden.  But from what he described, his condition today may be
17 different than it was a year ago.  I would want to just check
18 that out.
19         THE COURT:  The charge in count 2 is simple possession
20 of child pornography.  If there's no question that he possessed
21 the materials and there's no question of their pornographic
22 nature, then I would think the element of concern would be
23 knowledge.
24         MR. BEEVERS:  That's right.
25         THE COURT:  I assume the government is going to be

KACY PARKER BARAJAS
OFFICIAL COURT REPORTER, USDC - (916) 426-7640

1  able to prove that they were transported in interstate commerce
2  via the Internet.
3           We could go into it and see what his responses are to
4  the Court's questions, or we could wait.  I'm just trying to
5  think what we would accomplish by waiting.
6           MS. RUST:  Your Honor, if we may be heard.  We think
7  that there has been a sufficient issue raised today as to
8  whether or not the defendant would be able to voluntarily give
9  his guilty plea to count 2.  We think that coming back in two
10 weeks would be prudent.
11          THE COURT:  All right.  So is there anything else you
12 would suggest that either the government or Mr. Beevers do
13 before we come back again?  He said he's going to talk to the
14 psychiatrist over there, get a little bit more information from
15 her about the diagnosis and the medication that he's taking.
16 Would there be anything else you would suggest be done before
17 we come back again?
18          MS. RUST:  In addition to Mr. Beevers speaking with
19 the psychiatrist, it would be helpful to have a report or
20 something written, in written form from the psychiatrist.
21          THE COURT:  Do they do that over at the jail?
22          MR. BEEVERS:  I'm not sure if they do, but if not, we
23 can have somebody do that in consultation with them.
24          THE COURT:  All right.  So let's do that.  One week or
25 two?

```
 1              MR. BEEVERS:  Probably two weeks is safer.
 2              MS. RUST:  Yes.
 3              THE COURT:  So two weeks is February the 3rd, February
 4   the 3rd?
 5              MR. BEEVERS:  Yes.
 6              THE COURT:  All right.  We'll put this over to
 7   February the 3rd.  If you get a report before then, turn it
 8   over to the government and let the Court see it.
 9              MR. BEEVERS:  That sounds fine.
10              MS. RUST:  Thank you, your Honor.
11              THE COURT:  Anything else?
12              MS. RUST:  No.  Thank you.
13              THE COURT:  All right.
14              MR. BEEVERS:  All right.  Thank you, your Honor.
15              MS. RUST:  Thank you, your Honor.
16            (The proceedings adjourned at 9:24 a.m.)
17                              --oOo--
18   I certify that the foregoing is a correct transcript from the
19   record of proceedings in the above-entitled matter.
20                              /s/ Kacy Parker Barajas
                                _____
21                              KACY PARKER BARAJAS
                                CSR No. 10915, RMR, CRR, CRC
22
23
24
25
```