McGREGOR W. SCOTT
United States Attorney
ROSANNE L. RUST
CHRISTINA McCALL
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | CASE NO.  2:19-CR-00126-MCE |
| JAZIZ CEA, | | |
| Defendant. | | |

TRIAL BRIEF OF THE UNITED STATES

TRIAL BRIEF OF THE UNITED STATES

## TABLE OF CONTENTS

I.    STATUS OF THE CASE ..................................................................................................1

II.   ELEMENTS OF THE OFFENSE ..................................................................................1

      A.    Definitions..............................................................................................................2

III.  FACTUAL BACKGROUND ..........................................................................................4

      A.    Overview ................................................................................................................4

      B.    Cea's Military Career and Conduct Overseas ...................................................5

            1.    From half-way across the world, Cea accessed Welcome to Video on
                  the dark web so he could trade child pornography. .................................5

            2.    In addition to being active on W2V, Cea chats online with other like-
                  minded individuals while in Qatar. ..........................................................6

            3.    Cea emails himself a child pornography video using his Gmail
                  account. ......................................................................................................7

            4.    Cea also attempts to distribute child pornography videos on YouTube. .................7

            5.    Cea Confesses to Kassandra Zubia that he is sexually attracted to
                  minor females...........................................................................................8

      C.    Law Enforcement Officers Conduct the First Search Warrant at Cea's
            Residence. ..............................................................................................................8

            1.    During the first search warrant, Cea gives statements regarding his
                  sexual interest in children, ▮▮▮▮▮▮▮▮▮▮.........................................9

            2.    Law enforcement find child pornography on Cea's seized electronic
                  devices and one video of ▮▮▮▮▮▮▮▮ .........................................14

            3.    Law enforcement officers access Cea's Google account via consent
                  and review what he has stored in Google "Takeout."............................17

            4.    Law enforcement officers review Cea's Discord account. ...................19

      D.    Law Enforcement Conduct a Second Search Warrant at Cea's Residence. .......19

IV.   EVIDENTIARY ISSUES .............................................................................................20

      A.    Computer Files in General ................................................................................20

      B.    Computer Evidence and Images ......................................................................21

      C.    Inextricably Intertwined Evidence for Count One...........................................21

      D.    Rule 414 Evidence Is Admissible in This Case ...............................................22

      E.    Business Records ................................................................................................25

F.      Duplicates ........................................................................................................25

G.      Summary Charts.............................................................................................26

H.      Chain of Custody ...........................................................................................26

I.      Testimony Regarding a Person's Age...........................................................27

J.      "Missing Witness" Argument ........................................................................27

K.      Presentation of Witnesses ..............................................................................27

L.      Referring to the Defendant's Potential Punishment......................................28

M.      Minors Should Be Referred to by Their First Names or Initials During the
        Proceedings ....................................................................................................28

N.      Exclusion of Witnesses from the Courtroom .................................................29

O.      Exclusion of Defendant's Non-Incriminating Hearsay Statements ..............29

P.      Reverse Jencks ...............................................................................................30

Q.      Vouching for Witnesses and Arguing Facts Outside of the Record ..............31

R.      Courtroom Security........................................................................................31

V.    POSSIBLE DEFENSES ...........................................................................................31

VI.   EXCLUSION OF ANY EVIDENCE OFFERED BY THE DEFENDANT ..............31

VII.  CONCLUSION.........................................................................................................32

1

## TABLE OF AUTHORITIES

2    CASES                                                                              PAGE

3    *Burgess v. United States*,
         440 F.2d 226 (D.C. Cir. 1970) ................................................................................27

4
     *Doe ex. Rel. Rudy Glanzer v. Glanzer*,
5        232 F.3d 1258 (9th Cir. 2000) ................................................................................24

6    *Sheppard v. Maxwell*,
         384 U.S. 333 (1966) ................................................................................................29

7
     *United States v. Banks*,
8        556 F.3d 967 (9th Cir. 2009) ...................................................................................3

9    *United States v. Bosby*,
         755 F. App'x 706 (9th Cir. 2019) ...........................................................................22

10
     *United States v. Bramble*,
11       680 F.2d 590 (9th Cir. 1982) ..................................................................................27

12   *United States v. Briscoe*,
         896 F.2d 1476 (7th Cir. 1990) ................................................................................20

13
     *United States v. Cabrera*,
14       201 F.3d 1243 (9th Cir. 2000) ................................................................................27

15   *United States v. DeGeorge*,
         380 F.3d 1203 (9th Cir. 2004) ................................................................................21

16
     *United States v. Dost*,
17       636 F. Supp. 828 (S.D. Cal. 1986) ...........................................................................3

18   *United States v. Duncan*,
         919 F.2d 981 (5th Cir. 1990) ..................................................................................26

19
     *United States v. Fernandez*,
20       839 F.2d 639 (9th Cir. 1988) ..................................................................................30

21   *United States v. Frank*,
         956 F.2d 872 (9th Cir. 1991) ..................................................................................28

22
     *United States v. Gray*,
23       876 F.2d 1411 (9th Cir. 1989) ................................................................................31

24   *United States v. Guy*,
         708 Fed. Appx. 249 (6th Cir. 2017) ........................................................................14

25
     *United States v. Harrington*,
26       923 F.2d 1371 (9th Cir. 1991) ................................................................................26

27   *United States v. Henderson*,
         906 F.3d 1109 (9th Cir. 2018) ..................................................................................8

28

*United States v. Hernandez,*
    145 F.3d 1433 (11th Cir. 1998) ...................................................................................27

*United States v. Hill,*
    459 F.3d 966 (9th Cir. 2006) ....................................................................................3, 4

*United States v. Hillie,*
    289 F. Supp. 3d 188 (D.D.C. 2018) ..........................................................................2, 4

*United States v. Holt,*
    510 F.3d 10072 (9th Cir. 2007 ......................................................................................3

*United States v. Isaacs,*
    565 Fed. App'x 637 (9th Cir. 2014) ...........................................................................30

*United States v. Isabella,*
    918 F.3d 816 (10th Cir. 2019) .......................................................................................2

*United States v. Jayavarman,*
    871 F.3d 1050 (9th Cir. 2017) .....................................................................................24

*United States v. Johnson,*
    639 F.3d 433 (8th Cir. 2011) .....................................................................................2, 3

*United States v. Knox,*
    32 F.3d 733 (3d Cir. 1994) .............................................................................................4

*United States v. Lacy,*
    119 F.3d 742 (9th Cir. 1997) .........................................................................................4

*United States v. LeCompte,*
    131 F.3d 767 (8th Cir. 1997) .......................................................................................24

*United States v. LeMay,*
    260 F.3d 1018 (9th Cir. 2001) ...............................................................................23, 24

*United States v. Little,*
    753 F.2d 1420 (9th Cir. 1985) .....................................................................................29

*United States v. McHorse,*
    179 F.3d 889 (10th Cir. 1999) .....................................................................................23

*United States v. Mende,*
    43 F.3d 1298 (9th Cir. 1995) .......................................................................................24

*United States v. Meyers,*
    847 F.2d 1408 (9th Cir. 1988) .....................................................................................26

*United States v. Miller,*
    771 F.2d 1219 (9th Cir. 1985) .....................................................................................20

*United States v. Mitchell,*
    502 F.3d 931 (9th Cir. 2007) .......................................................................................29

*United States v. Norris,*
    428 F.3d 907 (9th Cir. 2005) .......................................................................................23

*United States v. Ortega,*
   203 F.3d 675 (9th Cir. 2000) ...................................................................29, 30

*United States v. Overton,*
   573 F.3d 679 (9th Cir. 2009) ..............................................................................3

*United States v. Rearden,*
   349 F.3d 608 (9th Cir. 2003) ..............................................................................2

*United States v. Sheldon,*
   755 F.3d 1047 (9th Cir. 2014) ...........................................................................23

*United States v. Shirley,*
   884 F.2d 1130 (9th Cir. 1989) ...........................................................................26

*United States v. Sims,*
   708 F.3d 832 (6th Cir. 2013) ..............................................................................2

*United States v. Sioux,*
   362 F.3d 1241 (9th Cir. 2004) .....................................................................22, 23

*United States v. Skeet,*
   665 F.2d 983 (9th Cir. 1982) ............................................................................27

*United States v. Smith,*
   893 F.2d 1573 (9th Cir. 1990) ...........................................................................25

*United States v. Tucker,*
   136 F.3d 763 (11th Cir. 1998) ............................................................................3

*United States v. Vela,*
   673 F.2d 86 (5th Cir. 1982) ..............................................................................20

*United States v. Villard,*
   885 F.2d 117 (3d Cir. 1989) ...............................................................................4

*United States v. Whitaker,*
   127 F.3d 595 (7th Cir. 1997) ............................................................................20

*United States v. Wiegand,*
   812 F.2d 1239 (9th Cir. 1987) ............................................................................3

*United States v. Wilkinson,*
   706 F. App'x 337 (9th Cir. 2017) ......................................................................23

*United States v. Yazzie,*
   976 F.2d 1252 (9th Cir. 1992) ...........................................................................27

**STATUTES**

18 U.S.C. § 1030(e)(1) ........................................................................................4

18 U.S.C. § 2252(a)(4)(B) ...................................................................................1

18 U.S.C. § 2253 ................................................................................................1

18 U.S.C. § 2256(1) ...........................................................................................2

18 U.S.C. § 2256(5) ............................................................................................................4

18 U.S.C. § 2256(6) ............................................................................................................4

18 U.S.C. § 3509 ..............................................................................................................25

18 U.S.C. § 3509(d) .........................................................................................................28

18 U.S.C. §§ 2251(a) ...............................................................................................1, 2, 23

18 U.S.C.A. § 2256(2)(A) (West 2018) ............................................................................2

**RULES**

Fed. R. Evid. 16(b)(1)(A) ...............................................................................................31

Fed. R. Evid. 16(c) ..........................................................................................................31

Fed. R. Evid. 16(d)(2) .....................................................................................................31

Fed. R. Evid. 414(a) ........................................................................................................22

Fed. R. Evid. 414(d)(2)(B) ..............................................................................................23

Fed. R. Evid. 615 .............................................................................................................29

Fed. R. Evid. 801(d)(2)(A) ..............................................................................................29

Fed. R. Evid. 1003 ...........................................................................................................25

Fed. R. Evid. 1006 ...........................................................................................................26

Federal Rule of Criminal Procedure 26.2 ........................................................................30

FRE 803(6) .......................................................................................................................25

FRE 902(11) .....................................................................................................................25

## I.    STATUS OF THE CASE

The Court will hear the jury trial in this case beginning on Tuesday, March 17, at 9:00 a.m.  The trial is expected to last no more than six court days.  The government has requested the appearance of 16 witnesses for its case in chief.  At this time, the government plans to offer exhibits into evidence, some of which will have multiple pages or sub-exhibits, and some of which will be videos.  The defendant is in custody.

On August 1, 2019, a Grand Jury returned a two-count indictment, alleging one count of attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and a second count for possession of child pornography depicting prepubescent minors, in violation of 18 U.S.C. § 2252(a)(4)(B).  The Indictment also contains a criminal forfeiture allegation under 18 U.S.C. § 2253 for, among other things, any and all interest the defendant has in devices upon which he stored child pornography or for devices he used to try and produce child pornography.

On February 24, the Court found that the defendant was currently competent to stand trial.  The Court also accepted the defendant's open guilty plea to the possession count.  Because the defendant pleaded guilty that charge, the United States is only required to prove beyond a reasonable doubt that the defendant attempted to produce child pornography of Juvenile Victim 1.

This trial brief sets forth the elements of the attempted child pornography offense; the case's factual background; anticipated evidentiary issues; and other trial management issues.

## II.    ELEMENTS OF THE OFFENSE

In Count One, the defendant is charged with attempting to produce child pornography of Juvenile Victim 1 between on or about October 16, 2018, and continuing through on or about February 20, 2019, in violation of 18 U.S.C. §§ 2251(a) and (e).

To prove the attempted production of child pornography charge, the United States must establish the following elements beyond a reasonable doubt:  (1) the defendant attempted to employ, use, persuade, induce, entice or coerce Juvenile Victim 1 to engage in sexually explicit conduct; (2) Juvenile Victim 1 was under 18 and the defendant believed Juvenile Victim 1 was under eighteen; (3) the defendant engaged in this behavior for the purpose of producing a visual depiction of such conduct; (4)

the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in or affecting foreign commerce; and (5) the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.  Ninth Circuit Model Jury Instr. 8.181 (Sexual Exploitation of Child) and 5.3 (Attempt); *see also United States v. Isabella*, 918 F.3d 816, 848 (10th Cir. 2019).

Because this is an attempt offense, the United States does not have to prove that the defendant actually obtained a visual depiction of Juvenile Victim 1 engaged in sexually explicit conduct.  *See United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013) (To convict the defendant of "attempted production of child pornography, the government does not need to prove that the videos of [the victim] were actually lascivious."); *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011) ("We believe that the district court's and the briefs' emphasis on whether or not the videotapes themselves are actually lascivious is somewhat misplaced.  The case was submitted to the jury only on an attempt theory.  A defendant's success in attaining his criminal objective is not necessary for an attempt conviction.") (internal citation omitted); *United States v. Hillie*, 289 F. Supp. 3d 188, 200 (D.D.C. 2018) ("It is well established that an image need not depict an actual sex act in order to constitute lascivious activity.").

## A.    Definitions

Many of the terms used in 18 U.S.C. §§ 2251(a) and (e) are statutorily defined:

### 1.    Minor

A minor is any person younger than eighteen years old.  18 U.S.C. § 2256(1).

### 2.    Sexually Explicit Conduct

Sexually explicit conduct is actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.  18 U.S.C.A. § 2256(2)(A) (West 2018).

### 3.    Sadistic Abuse

Sadistic abuse is sexual conduct that involves pain to the minor child involved.  Sadism involves a form of satisfaction, commonly sexual, derived from inflicting harm.  *United States v. Rearden*, 349

F.3d 608, 615 (9th Cir. 2003) (quoting, in part, Black's Law Dictionary 1198 (1979)).  The Ninth Circuit has ruled that courts may infer that a prepubescent child experienced pain when he or she was penetrated by an adult man.  *Id*. at 615-16; *United States v. Holt*, 510 F.3d 1007, 1011-1012 (9th Cir. 2007) (stating that the *Rearden* holding "follows even more strongly … where at least one image … depicted the penetration of a two- or three-year-old child by an adult[]").  Other courts have ruled that courts may infer that a child experienced pain when he or she was bound.  *United States v. Tucker*, 136 F.3d 763, 764 (11th Cir. 1998) (finding that a district court properly assessed the sadistic conduct enhancement when the defendant possessed photographs of minors in bondage).

### 4. Lascivious Exhibition of the Genitals or Pubic Area

In determining whether a depiction includes lascivious exhibition of the genitals or pubic area, the trier of fact may consider the following list of non-exhaustive factors:  (1) whether the focal point of the depiction is the child's genitals or pubic area; (2) whether the setting of the depiction is sexually suggestive, for instance, the setting is in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose or in inappropriate attire, considering the age of the child; (4) whether the child is fully clothed, partially clothed, or nude; (5) whether the depiction suggests sexual coyness or a willingness to engage in sexual activity; or (6) whether the depiction is intended or designed to elicit a sexual response from the viewer.  *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom.  *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987); *United States v. Overton*, 573 F.3d 679, 686-87 (9th Cir. 2009*)*; *see also United States v. Hill*, 459 F.3d 966, 971-72 (9th Cir. 2006); *Johnson*, 639 F.3d at 439-40.  A visual depiction need not involve all of these factors to be a lascivious exhibition, and it is for the trier of fact to decide the weight or lack of weight to be given to any of these factors.  *See Dost*, 636 F. Supp. at 832; *see also Overton*, 567 F.3d at 686-87.

Additionally, whether a depiction is lewd or lascivious should be viewed from the perspective of the photographer or viewer, not from the perspective of the minor being photographed.  "[A]pplied to the conduct of children, lasciviousness is not a characteristic of the child photographed, but of the exhibition which the photographer sets up for an audience that consists of himself and likeminded pedophiles."  *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987); *see also United States v. Banks*, 556 F.3d 967, 980 (9th Cir. 2009) ("This focus results in a definition of lascivious that

criminalizes images 'so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.'") (quoting *Hill*, 459 F.3d at 972); *Hillie*, 289 F. Supp. 3d at 200 ("An inference of lasciviousness based on the videographer's intent is particularly appropriate where the images are captured in secret and without the victim's knowledge, because in such cases—especially situations involving  minors—it is less likely the victim will be engaging in what is traditionally considered sexually explicit conduct.").  An exhibition of the genitals or pubic area may encompass a visual depiction of a child's genital or pubic area even where those areas are covered by clothing.  *See Dost*, 636 F. Supp. at 832; *United States v. Knox*, 32 F.3d 733, 746 n.10 (3d Cir. 1994) (finding that lasciviousness exhibition of the genitals does not require a nude display of the genitals nor does it "suggest a requirement that the contours of the genitals or pubic area be discernable or otherwise visible through the child subject's clothing"); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

**5.     Visual Depiction**

Visual depictions include undeveloped film and videotape.  They also include data stored on computer disk or by an electronic means that is capable of conversion into a visual image.  18 U.S.C. § 2256(5); *see United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997).

**6.     Computer**

A computer is an electronic magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions.  The definition also includes any data storage facility or communications facility directly related to or operating in conjunction with such device.  It does not include an automated typewriter, portable hand held calculator, or other similar device.  18 U.S.C. § 2256(6); *see* 18 U.S.C. § 1030(e)(1).

**III.     FACTUAL BACKGROUND**

**A.     Overview**

Detective Mark Wilson in Houston, Texas, originally identified Jaziz Cea in 2018 while investigating another defendant (Bertoldo Lugo) who was also sexually interested in minors.  To determine more about Cea and to see if he was also located in Texas, Detective Wilson and the Houston Internet Crimes Against Children (ICAC) task force started a separate investigation into Cea.  Using subpoenas and search warrants, the Houston ICAC task force gathered information on Cea.  They

1   discovered that Cea used the Internet to obtain and distribute child pornography on various platforms,

2   including Skype, and Cea liked talking on-line with other people who also had a sexual interest in

3   children.  They also uncovered disturbing Skype conversations between Cea and Lugo which are

4   described below.

5           The Houston ICAC task force also discovered that Cea was in the military, overseas, at the time

6   of their investigation, but his home in the United States was located in Galt, California.  The Houston

7   ICAC task force sent the evidence it gathered to the Galt Police Department.  The Galt police, working

8   with the Sacramento ICAC team, continued the investigation into Cea.  The Galt/Sacramento ICAC

9   team obtained two search warrants for Cea's residence in Galt, California, interviewed Cea after he

10  agreed to waive his *Miranda* rights at the first search warrant, performed forensic analyses on Cea's

11  electronic devices seized during the first residential search warrant, and interviewed other potential

12  witnesses.  They also conducted further investigation into Cea's illegal activity on the dark web,

13  including his receipt and distribution of child pornography.

14          **B.      Cea's Military Career and Conduct Overseas**

15          Shortly after Cea turned 18, he joined the California Army National Guard.  As a member of the

16  Guard, Cea deployed to Qatar in September 2017.  Before he returned to the United States in July 2018,

17  and while still in Qatar, Cea had access to the Internet and at least one electronic device, which allowed

18  him to chat with other people online and access the dark web.

19

20          **1.      From half-way across the world, Cea accessed Welcome to Video on the dark
                web so he could trade child pornography.**

21          While serving in Qatar, Cea accessed the dark web for the purpose of trying to obtain and

22  distribute child pornography.  Cea was active on Welcome to Video (W2V), between January 2018 and

23  February 2018, originally under the username redman, and then under a second username, bloodman.

24          To provide relevant background, W2V began operating at least in or about June 2015.  Its

25  purpose was to host and facilitate the distribution of child pornography on the dark web.  To make that

26  point clear, on the upload page, W2V stated, "Do not upload adult porn."  The site also made each video

27  available for download by a title, a description (if the uploader included one), "tags" with further

28  descriptions of the video, and a preview thumbnail image that contained approximately sixteen unique

1    still images from the video.

2         To download a video, a customer needed to first generate a free account by creating a username

3    and password.  After the customer had an account, the customer could then browse picture previews of

4    child pornography available for download.  To download videos, the customer had to redeem points.  A

5    customer could obtain points in one of four ways:  (1) uploading videos depicting child pornography; (2)

6    referring new customers to the website; (3) paying 0.03 bitcoin, which is a type of cryptocurrency, for a

7    VIP account that lasted six months and purportedly allowed unlimited downloads; and/or (4) paying for

8    points incrementally.  Each time another customer downloaded a video, the uploader of the video also

9    earned points to put toward downloading content from the site.  Points were not transferable to any other

10   website or application.  Bitcoin was also not refunded or available for redirection once it was sent to

11   W2V.

12        On W2V, on or about February 20, 2018, and February 21, 2018, Cea uploaded four videos

13   under his redman username, which he described as depicting child pornography.  Each description read

14   as follows:  "(1) cute Lolita Asian; (2) cute 13yo fucked; (3) 15yo Cambodian nailed deep; and (4) 14yo

15   and 15yo blowjob".

16        Cea also downloaded 168 videos over the span of 44 days.  Several of those downloads were of

17   prepubescent minor females engaged in illicit sexual activity.  Many of those videos are detailed in the

18   government's Notice Under Rule 414 and 404(b) (ECF No. 39).

19              2.    **In addition to being active on W2V, Cea chats online with other like-minded**
                      **individuals while in Qatar.**

20        One of the many platforms Cea used to communicate with others while he was deployed

21   overseas was Skype.  On Skype, Cea went by "live:jazizcea".  Under that name, Cea communicated with

22   at least two other Skype users between February 2018 and April 2018.  The first was Bertoldo Lugo,

23   who had two accounts:  (1) live:bertoldolugo; and (2) "live:af15bf36f5bc1674."  Cea also communicated

24   with another Skype user:  petersam55.  Cea discussed his sexual interest in children with both

25   petersam55 and Bertoldo Lugo.  Cea also received six child pornography videos from Bertoldo Lugo,

26   and several of the videos he received depict the sexual abuse of prepubescent minor females.  Those

27   videos are described in the government's Notice Under Rule 414 and 404(b) (ECF No. 39).

28

1        3.      **Cea emails himself a child pornography video using his Gmail account.**

2       Although Cea had several email accounts during the relevant time period, at least one in

3   particular had items of relevance for the purpose of this trial, jazizcea@gmail.com.  Using that account,

4   on or about April 29, 2018, Cea sent a child sexual abuse video from himself to himself with file name:

5   hy5ukx4avr7a33ywmidxj.webm.  The video depicts a prepubescent girl (approximately 8-11 years of

6   age) performing oral sex on an adult male.  (Notably, this video is one of the same ones Cea recently

7   admitted to possessing when he pleaded guilty to Count Two of the Indictment on February 24.)

8        4.      **Cea also attempts to distribute child pornography videos on YouTube.**

9       While deployed, Cea also accessed his YouTube account under username, jazizcea@gmail.com,

10  with Wendigo Studios as his YouTube channel name.[1]  From that account, on or about May 13, 2018,

11  Cea attempted to upload to YouTube four videos depicting children engaged in explicit sexual acts.

12  That same day, Cea conducted Google searches for:  what YouTube's flagging guidelines were; how

13  you can find who flagged you on YouTube; can YouTube see your private video; and can YouTube take

14  down a private video.

15      In the first video Cea tried to upload, Cea used his account to try and put the following file on the

16  Internet, lERfWSQfv2M.mp4.  Before trying to upload it, however, Cea added the following title,

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████  The

19  contents of that video are described in the government's Notice Under Rule 414 and 404(b) (ECF No.

20  39).

21      The second video has the file name, greXHVrJ1lw.mp4.[3]  Before attempting to upload it, Cea

22

23      [1]  The name "Wendigo" has its own significance and can be seen in several Algonquian folklores
as a mythical man-eating monster and evil spirit native in the United States and Canada.  The Wendigo

24  becomes significant to this case when it is combined with other notable characters Cea appears to
idolize, including Hannibal Lecter.  There appears to be a recurring theme of cannibalism throughout

25  Cea's illustrations.

26      [2]  For the charged timeframe in the Indictment, ██████████████████████████

27  ████████████████████████████

28      [3]  The original file name of this video was hy5ukx4avr7a33ywmidxj.webm.  This file is the same
file Cea sends to himself using email address jazizcea@gmail.com on or about April 29, 2018.  It is also

added the following title, "█████████████" and the description, █████████████

█████████████████████████████". The contents of that video are described in the

government's Notice Under Rule 414 and 404(b) (ECF No. 39).

The remaining two videos further depict prepubescent minors engaged in illicit sexual activity.

As a result of Cea's attempt to upload the four child pornography videos, the National Center for

Missing and Exploited Children (NCMEC) received reports from YouTube.

> 5. **Cea Confesses to Kassandra Zubia that he is sexually attracted to minor females.**

During his deployment, after an evening where he drank some beers, Cea confessed to another

member of his National Guard platoon, Kassandra Zubia, that he was sexually attracted to little girls

between the ages of 7 and 14 and he felt very guilty about watching child pornography videos. Cea also

told Ms. Zubia that he had been accessing the dark web while they had been deployed and that he found

child pornography videos through The Onion Router (TOR).[4] Cea then showed Ms. Zubia how he was

able to access the dark web through a TOR application on his cellphone. Cea further explained that he

could locate other items on the dark web, such as drugs and hitmen. Cea went on to describe for her his

favorite video that he bought on the dark web for $60. Cea said the video showed two men kidnapping a

girl and then taking her into the woods, where they raped her and finally killed her. Ms. Zubia

understood the girl in that video to be a young minor.

> C. **Law Enforcement Officers Conduct the First Search Warrant at Cea's Residence.**

Cea returned from his deployment in or about July 2018. After returning home, he moved to his

father's house █████████████████████████████ in Galt, California.

On February 20, 2019, law enforcement executed a search warrant at Cea's home. Law

enforcement officers interviewed Cea, and located and seized various items, including but not limited to,

---

the same file he has saved on his iPhone when law enforcement seized it during the first residential
search warrant at 649 Pestana Drive.

[4] The Onion Router, or TOR, is an anonymous network. *United States v. Henderson*, 906 F.3d
1109, 1111 (9th Cir. 2018). A user must download and install the network software on his computer.
TOR then allows the user to visit any website without revealing the IP address, geographic location, or
other identifying information of the user's computer by using a network of relay computers. *Id.* TOR
also allows users to access "hidden services," which are websites that are accessible only through the
TOR network and are not accessible publicly. *Id.* at 1111-12.

Cea's white Acer Chromebook, his iPhone and spyware camera with accompanying user manual. Additionally, Cea gave consent to access both his Google and his Discord accounts, which law enforcement officers assumed and then searched.

    1.  **During the first search warrant, Cea gives statements regarding his sexual interest in children, ▇▇▇▇▇▇▇▇▇▇▇▇▇.**

  After receiving and waiving his *Miranda* rights, Cea provided voluntary statements to law enforcement. After taking Cea's basic information, over the course of over three hours, Cea told the officers the following summary of information:

  Cea stated he owned the iPhone and a white Acer Chromebook that officers found in his bedroom. He said he was the sole user of both devices. He said his girlfriend occasionally used the Chromebook, but logged into her own profile, not his. Cea then provided law enforcement with the password to log on to his account on the Chromebook, as well as the access passcode to the iPhone.

  Cea further admitted to utilizing the dark web through TOR to look at "a bunch of stuff to see if it [wa]s real." He located illegal drugs for sale, hitman websites, as well as "child pornography, of course." Cea said he got his child pornography from various dark web sites, including Topic Links 2.0. Cea further told law enforcement that he liked looking at child pornography, but he tried not to because he knew it was wrong and he was afraid of being arrested. He had spoken with his girlfriend about it and she asked him to promise her not to look at child pornography anymore.

  Cea also admitted to having various online accounts, including on Facebook, Tumblr, Discord, and Gmail. Cea had stored child pornography in his Google Drive account, but he believed he had deleted it and it was no longer there. Cea also suggested to law enforcement that he has been into child pornography for several years. Specifically, Cea said his interest had been "bothering him for 9 years," and that having the FBI show up at his door was his "nightmare."

  Cea said he had tried to stop viewing child pornography. He claims he told a fellow soldier that he struggled with an affinity for child pornography when he was deployed in Qatar. This soldier purportedly reported the conversation to Cea's Sergeant who told him to seek help by talking to the

chaplain.  Cea claimed the chaplain told him to try to control it and refrain from acting on his impulses. Cea did not feel like that advice had helped him.

Cea said he had seen child pornography depicting children as young as 3 years of age.  However, the majority of files he had viewed depicted children between the ages of 8 and 17 years, and his age of preference was 12 years old.  CEA was interested in girls mostly, but "sometimes boys."  Cea again admitted he was able to get child pornography videos from the dark web on Topic Links 2.0 and to download them to his Chromebook.  Cea admitted to downloading the child pornography files law enforcement later discovered on his Chromebook, approximately "a week ago," which is consistent with the evidence obtained forensically from the Chromebook, which shows seven files containing depictions of children engaged in sexual acts downloaded beginning February 11 to February 18, 2019, and the search warrant was executed on February 20, 2019.  CEA said he felt bad about this because the girls in these videos were approximately the same age as ███████████.

Cea was shown part of the Skype conversation with live:bertoldolugo, ███████████

1        Cea said when he was 17,



19        Cea admitted to downloading files of child pornography to his Chromebook approximately one

20 week prior to his interview. Cea admitted to watching the downloaded videos once and masturbating to

21 them. He further stated that

22 CEA thought he had deleted the files he downloaded, though he said

23 investigators may find un-deleted child pornography in the "Recent" folder. CEA said that the files of

24 child pornography were downloaded from the dark web to the "Downloads" folder on the Chromebook.

25 (This is consistent with the forensic review completed on his Chromebook.)

26        When asked who        " was, CEA indicated she was a girl who was the subject of a

27 well-known series of child pornography. He knew her real name and provided it. Cea also admitted he

28

1   had searched for and found pornography depicting ▮▮▮▮▮ He was not sure if it was still on his phone

2   or laptop though.

3           During the interview, Cea also stated he had purchased a "spyware" camera from the Internet.

4   CEA stated that the camera connected wirelessly to his iPhone.  A review of the Internet activity on

5   Cea's iPhone shows that on September 19, 2018 at 7:06 PM UTC, there was a link to a wireless spy

6   camera on Amazon with a link that appears to be a purchase confirmation.  Cea further stated that he

7

8

9

10

11          Cea also planted the camera in a bathroom drawer in ▮▮▮▮▮

12

13

14

15          Cea admitted to masturbating ▮▮▮▮▮                                One time occurred

16   while she was wearing Virtual Reality goggles.  Given that, Cea stated she could not see what was

17   happening because the goggles block a person's entire view.

18

19

20

21

22

23

24

25

26

27          In addition to this conduct, Cea stated that he had purchased pornographic images and videos

28   from numerous underage girls via the Kik app.  He had found a list on the dark web of underage girls'

Kik usernames who would be willing to sell pornographic images of themselves.  Cea said he paid

between $20 and $70 per transaction via Paypal to purchase such images/videos.  He asked some of the

girls to pose in certain ways or write a certain word on a piece of paper in one of the images/videos to

ensure they were producing new material for him, and not just sending him images or videos that they

had previously produced.

    CEA was an artist and often drew anime style cartoons.  According to Cea, his characters

included a protagonist who was good, but struggled with temptations, and a villain who was a pedophile.

The villain tried to fight his pedophilic urges, but failed.  The villain's backstory was that people at his

high school found out he was a "pedo" and this caused a large amount of rage in him.  Based on these

statements, officers showed Cea the picture below that he drew of a man wearing a "Pedobear" mask

sitting on a park bench next to a small female, who looks like a child, based on the character's pigtails,

flat chest, size compared to the male character, and the manner in which she is eating a candy bar.

As seen in the drawing, text boxes can also be seen near the male character which read, "It's much more

easier to talk to you guys then…adults".  Cea's signature and dated year of 2018 appear in the lower

right-hand corner of this illustration.[5]



<hr>

[5] Pedobear is an Internet meme that is portrayed by a pedophilic cartoon bear.  The name
"Pedobear" suggests a short-hand version of "pedophile," and the Pedobear is often used by individuals
who wish to engage in the sexual exploitation of children.  *United States v. Lancina*, 2017 CCA LEXIS

Cea said the picture depicted his "villain" wearing a Pedobear mask, sitting on the bench next to a young girl.  When asked why the villain wore a mask, he said the villain was hiding his shame.  When asked how much of this villain character was in Cea, he replied about forty percent.

Finally, Cea admitted to destroying a thumb drive that contained child pornography approximately four days prior to his interview.  He felt bad about having child pornography at that time and he hit it with a hammer and threw it in a garbage can at the residence.  (Investigators later recovered this thumb drive from the trash can at Cea's house, but it was damaged as Cea indicated and no data could be extracted from it.)

        **2.**     **Law enforcement find child pornography on Cea's seized electronic devices and one video of ▮▮▮▮▮▮▮▮▮▮.**

Among the items seized during the first search warrant were Cea's white Acer Chromebook, his iPhone and a spyware camera.

Concerning the Chromebook, law enforcement completed a review of that device.  Of note, they located an image in the "Downloads" folder, showing Cea holding his cellular phone up to the Chromebook's camera.  In that photo, Cea's face and his banking information and Apple ID password can be read on his iPhone screen.

In addition to this image, there were seven videos of child pornography on the Chromebook, which Cea admitted to possessing when he pleaded guilty to Count Two on February 24.

436 at *13.  *See also United States v. Guy*, 708 Fed. Appx. 249, 252, 253, 260-61 (6th Cir. 2017).

1      There were also several memes and photographs on the Chromebook.  The following memes

2  depict messages about Pedobear and pedophiles:







1    The following is a picture of Cea at a local convention in early September 2018, dressed as the

2    Joker and wearing a cardboard pedobear mask necklace:



25    Regarding Cea's iPhone, law enforcement also completed a review of that device.  During the

26    review, agents found one child pornography video on Cea's iPhone in the "Notes" application,

27    hy5ukx4avr7a33ywmidxj.webm, which was the same video Cea emailed himself on or about April 29,

2018, and later tried to upload to YouTube on May 13, 2018. It was also one of the child sexual abuse videos Cea admitted to possessing when he pleaded guilty to Count Two on February 24.

Also discovered in the Notes section was a "fiction" story Cea wrote on October 14, 2018, and then modified on October 15, 2018, which describes the sexual abuse of a high school girl.

Agents also found IMG_1540.MP4, which is a color video, apparently a screen recording from Cea's iPhone, focused at near waist level. Early in the video,



3.    **Law enforcement officers access Cea's Google account via consent and review what he has stored in Google "Takeout."**

In Cea's Google account, there were several items of interest. First, there were three videos of ⬛⬛⬛⬛⬛⬛. The first one, IMG_1621, is a color video approximately 40 seconds in length of

The date in the metadata for this video is November 5, 2018.

The second video is a color video, approximately 1 minute long of ⬛⬛⬛⬛⬛⬛

1  

2  

3  

4  ████████████ The date in the metadata for this video is September 14, 2018.

5  The third video is a color video, approximately 25 seconds long, ████████

6  

7  

8  ████████

9      In addition to these three videos, Cea conducted several relevant searches online between July

10  18, 2018 and February 16, 2019:

11      1.      Welcome to video onion on July 18, 2018

12      2.      Couple sells their kid to Darknet pedophiles on July 30, 2018

13      3.      Spycamera on hook on August 15, 2018

14      4.      ████████ Instagram on August 15, 2018

15      5.      Coinmama: buy bitcoin and ethereum with credit card on August 16, 2018

16      6.      Which sleeping pills make a person unconscious on August 17, 2018

17      7.      Rohypnol on August 17, 2018

18      8.      Sleeping pills for kids under 12 on August 17, 2018

19      9.      Can a 12 year old take sleeping pills on August 17, 2018

20      10.     Rape drug on August 20, 2018

21      11.     Deep web pedophile on August 29, 2018

22      12.     Pedobear on September 1, 2018

23      13.     Deep web CP victims on September 21, 2018

24      14.     Missing and exploited children list on September 21, 2018

25      15.     National Center for Missing and Exploited Children on September 21, 2018

26      16.     How to make Nyquil taste good on October 15, 2018

27      17.     Is there anyway to make Nyquil taste better on October 15, 2018

28      18.     How to hide the taste of Nyquil on October 15, 2018

19.  Effective techniques for masking medicine on October 15, 2018

20.  Loli hentai on October 16, 2018

21.  Deep web links cp on October 16, 2018

22.  Tara series deep web on November 2, 2018

23.  Omegle kids on November 5, 2018

24.  Pedo hebephile[6] on November 7, 2018

25.  Little girls in swimsuits on December 6, 2018

Cea also searched for various things on YouTube, including:

1.  ▓▓▓▓▓▓▓▓ [who is a victim in a well-known child pornography series] on September 21, 2018

2.  ▓▓▓▓▓▓▓ on September 21, 2018

    **4.  Law enforcement officers review Cea's Discord account.**

In addition to the other accounts Cea used, he also had an account on Discord.  Through that electronic platform, Cea communicated with several other individuals, including an individual with user name:  Thomasmarino.  In Discord chats with Thomasmarino on February 8, 2019, ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓.

**D.  Law Enforcement Conduct a Second Search Warrant at Cea's Residence.**

After reviewing the contents of Cea's electronic devices after the first search warrant, law enforcement executed another search warrant at Cea's residence.  During the search, officers seized various items, including the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[6] Hebephile means an adult male who is sexually interested in girls starting early adolescence.

## IV.     EVIDENTIARY ISSUES

### A.     Computer Files in General

This case involves a substantial volume of digital evidence recovered from the defendant's Chromebook and iPhone—both of which act as a computer.  The standard for authenticating computer records is the same for authenticating other records and does not vary simply because the original record happened to be in electronic form.  *United States v. Vela*, 673 F.2d 86, 90 (5th Cir. 1982) (confirming that "computer evidence is not intrinsically unreliable" and upholding the admission of computer-generated telephone company records).  The witness who testifies to the authenticity of the computer record need not have special qualifications and need not have programmed the computer or even understand the technical operation of a computer.  *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985) ("It is not necessary that the computer programmer testify in order to authenticate the computer-generated records.") (citation omitted).  Instead, the witness need only have first-hand knowledge of the facts to which he testifies, such as examining or seizing the computer from which the records were obtained.  *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997).  The authenticity of a computer program is also generally not a bar to the admission of evidence derived from the use of such program.  Such challenge is defeated by providing sufficient facts to support a finding that the records are trustworthy and the opposing party has the chance to inquire into the accuracy of such records.  *United States v. Briscoe*, 896 F.2d 1476 1494-1495 (7th Cir. 1990).  Typically, the reliability of a computer program can be established by showing that the users of the program actually do rely upon it on a regular basis.  *Id.* at 1494 (holding that computerized records held by a telephone company were admissible).

In this case, Special Agent Medlin, a trained computer forensic analyst, will testify that computer forensic software was used to retrieve the information found on the defendant's computers, *i.e.*, his iPhone and Chromebook.  The software is a well-known and a generally-accepted means of conducting a forensic examination.  The government does not anticipate an objection to the use of the forensic software in this investigation because many defense experts rely upon the same program and because defense counsel (as well as his investigator) in this case was provided continuous access to the defendant's iPhone and Chromebook and the opportunity to conduct a forensic examination.

**B.** <u>**Computer Evidence and Images**</u>

The government may show the jury various items of evidence found on the defendant's iPhone and Chromebook, including, but not limited to, video exhibits of child pornography. These video exhibits have been made available to defense counsel for review, and their admissibility has been briefed in the government's Notice (ECF No. 39).

**C.** <u>**Inextricably Intertwined Evidence for Count One**</u>

To prove that the defendant attempted to produce child pornography of Juvenile Victim 1, the

Such evidence is inextricably intertwined with the attempted production charge, and is admissible if it either: (1) "constitutes part of the transaction that serves as the basis for the criminal charge," or (2) is "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004).

Here, the United States must prove beyond a reasonable doubt that Cea had the specific intent to produce a sexually explicit visual depiction of Juvenile Victim 1 and that he took a substantial step toward completing that offense.

1    The same is true for Cea's specific statements about

14    Based on the foregoing, these categories of evidence are inextricably intertwined with the

15    attempted production conduct charged in Count One and should be admitted to prove the intent element

16    of that offense.[7]

17    **D.    Rule 414 Evidence Is Admissible in This Case**

18    In its Notice under Rule 414 and 404(b) (ECF No. 39), the United States identified several pieces

19    of evidence that constitute other sexual assault or child molestation that the United States plans to offer

20    in its case in chief.

21    Rule 414 provides that in a criminal case in which the defendant is accused of a sexual assault or

22    child molestation, evidence of the defendant's commission of another offense of sexual assault or child

23    molestation is admissible, and may be considered for its bearing on *any matter to which it is relevant*.

24    Fed. R. Evid. 414(a) (emphasis added).  Such evidence is not temporally limited to prior acts of a

25    defendant, but instead encompasses all other acts, whether before, after, or contemporaneous with the

26    charged conduct.  *See United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th Cir. 2004); *see also United*

----

[7]  Alternatively, the evidence discussed in this section is admissible under Rule 414 and/or 404(b) to show intent, motive, preparation, plan and absence of mistake.

1  *States v. Bosby*, 755 F. App'x 706, 707 (9th Cir. 2019) (stating that the Ninth Circuit "has never limited"

2  414 evidence to "past conduct").  It further includes witness testimony regarding the other acts evidence

3  and statements by the defendant concerning the same.  *United States v. Norris*, 428 F.3d 907, 911, 913–

4  14 (9th Cir. 2005); *United States v. LeMay*, 260 F.3d 1018, 1024, 1030 (9th Cir. 2001).

5        In determining whether to admit evidence under Rule 414, district courts undertake a three-part

6  inquiry:  (1) whether the defendant is accused of an offense involving sexual assault or child

7  molestation; (2) whether the proffered evidence is proof of another sexual assault or child molestation;

8  and (3) whether the proffered evidence is relevant.  *United States v. McHorse*, 179 F.3d 889, 897-98

9  (10th Cir. 1999); *Sioux*, 362 F.3d at 1244.

10        Here, the evidence satisfies each prong.  Under the rule, any conduct prohibited by chapter 110 is

11  a crime of child molestation.  *See* Fed. R. Evid. 414(d)(2)(B); *see also United States v. Sheldon*, 755

12  F.3d 1047, 1050–51 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 203 (2014) (even simple possession of child

13  pornography was "child molestation" for purposes of Rule 414, as possession of child pornography is

14  conduct that falls within chapter 110); *United States v. Wilkinson*, 706 F. App'x 337, 340 (9th Cir. 2017)

15  (affirming the district court's 414 rulings allowing victim testimony about uncharged acts of molestation

16  in a production, possession and access with intent to view child pornography case).  In this case, Cea is

17  proceeding to trial on only one count in the Indictment, *i.e.*, the attempted production of child

18  pornography charge in a violation of 18 U.S.C. §§ 2251(a) and (e), which appear in chapter 110.  The

19  evidence identified in ECF No. 39 also consists of other sexual act or child molestation conduct, which

20  is relevant to prove that Cea specifically intended to produce child pornography of ▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The

22  evidence also shows that to satisfy his sexual desires he would seek out, obtain and watch child

23  pornography videos.

24        Because Rule 414 is a rule of inclusion, the law requires exclusion of relevant evidence only

25  when the probative value of evidence is substantially outweighed by the danger of unfair prejudice.

26  *LeMay*, 260 F.3d at 1026.  The Ninth Circuit has made clear that Rule 403 "is an extraordinary remedy

27  to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.  Under the

28  terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence,

but substantially outweigh it." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995).  While

evidence of prior sexual acts will always be "emotionally charged and inflammatory," courts must keep

in mind that the allegation that the defendant committed the charged crimes will be just as inflammatory.

*LeMay*, 260 F.3d at 1030.  In enacting Rule 414, Congress was aware that evidence of child sexual

abuse carries a "unique stigma" and risk of jury prejudice.  *United States v. LeCompte*, 131 F.3d 767,

769–70 (8th Cir. 1997).  Nevertheless, Congress intended to override concerns about the stigma of such

evidence—concerns which had previously excluded prior sexual act evidence—by enacting Rule 414.

*Id.*

In light of "the inherent strength of the evidence that is covered by Rule 414," the Ninth Circuit

has advised that "when putting this type of evidence through the Rule 403 microscope, a court should

pay careful attention to both the significant probative value and the strong prejudicial qualities of that

evidence." *Doe ex. Rel. Rudy Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) (alterations

omitted).  Accordingly, the court has articulated several factors that district judges "must evaluate in

determining whether to admit evidence of a defendant's prior acts of sexual misconduct": (1) the

similarity of the prior act to the act charged; (2) the closeness in time of the prior act to the act charged;

(3) the frequency of prior acts; (4) the presence or lack of intervening circumstances; and (5) the

necessity for the evidence beyond the testimony already offered at trial.  *LeMay*, 260 F.3d at 1027–28

(quoting *Glanzer*, 232 F.3d at 1268).

As detailed in the government's Notice (ECF No. 39), evaluation of the evidence to be offered in

this case about Cea's prior child molestation offense conduct weighs in favor of admitting the evidence

at trial.[8]

---

[8] In the context of evaluating trial exhibits, the Ninth Circuit has held that a district court must review the actual exhibit in order to properly undertake its Rule 403 evaluation.  *See, e.g.*, *United States v. Jayavarman*, 871 F.3d 1050, 1063–64 (9th Cir. 2017).  The United States has, and continues to make, its exhibits under Rule 414 available for defense to review, and can provide them to the Court under seal upon request.

Regarding testimony, the government does not believe the rule in *Jayavarman* applies to evaluating potential *testimony* under Rule 403.  However, to the extent the defendant may object to the facts as proffered by the government, and to the extent the Court finds it needs additional material to properly exercise its discretion under Rule 403, the government has summarized the relevant statements, which have previously been provided to the defense.  Most of the statements, not included in the Notice (ECF No. 39), have also been provided to the Court as Exhibit 4 to the government's motion for competency evaluation (ECF No. 30).

### E.     Business Records

Through witness testimony, the United States will plan to introduce business records from various companies if necessary.  The United States provided notice under Federal Rule of Evidence (FRE) 902 and has produced or will produce prior to trial to the defense FRE 902(11) certifications signed by custodians of record for companies listed below in the chart:

| 902(11) | Range of Documents 902(11) Certification Covers | Entity | Description |
|---|---|---|---|
|  |  | Bitstamp | Bitstamp records for Cea |
| CEA_102–103 | CEA_104-109 | Coinmama | Coinmama for Cea |
| CEA_135-36 | CEA_111-120 | Amazon | Amazon records for one of Cea's Amazon accounts |
| CEA_110 | CEA_CONFIDENTIAL_1664-1890 | California National Guard | Military records for Cea |
| CEA_CONFIDENTIAL_1187–1193 | CEA_CONFIDENTIAL_975-77; CEA_CONFIDENTIAL_1431-1480 (and other materials made available for review under 18 U.S.C. § 3509) | Google | Google records for Gmail account jazizcea@gmail.com |
| CEA_CONFIDENTIAL_1933-1934 | CEA_CONFIDENTIAL_1935-1938 | Google | Google records for YouTube Uploads by jazizcea@gmail.com |
| CEA_CONFIDENTIAL_1182 and CEA_CONFIDENTIAL_1186 | CEA_CONFIDENTIAL_1489-1513 (and other materials made available for review under 18 U.S.C. § 3509) | Microsoft | Microsoft/Skype records for live: jazizcea |

The defense has not indicated any objection to such business records being moved into evidence under FRE 902(11).  As such, the records are admissible under FRE 803(6) and 902(11), without the testimony of a custodian of record.

### F.     Duplicates

Some of the documents the United States may seek to introduce, including business records, may be duplicates of original documents.  A duplicate is generally admissible to the same extent as an original.  *See* Fed. R. Evid. 1003; *United States v. Smith*, 893 F.2d 1573, 1579 (9th Cir. 1990).  The

1    United States also intends to use the Court's computer presentation system to present documents to the

2    witnesses and to the jury, after these documents have been received into evidence.  The United States

3    will be responsible for publishing these documents to the jury.

4           G.    **Summary Charts**

5           The United States anticipates that Special Agent Schofield and Sacramento Sherriff's Detective

6    Christie Hirota may use summary exhibits during their respective testimony.  These summaries will

7    show summary evidence of child sex abuse videos Cea had obtained from the Internet.  Given the

8    number of videos and associated data, the United States respectfully submits that summaries are

9    appropriately admitted into evidence.  *See* Fed. R. Evid. 1006; *United States v. Meyers*, 847 F.2d 1408,

10   1411-1412 (9th Cir. 1988).

11          In particular, FRE 1006 provides that "the content of voluminous writings, recordings or

12   photographs which cannot be conveniently examined in court" may be presented in the form of a

13   "summary, chart or calculation."  FRE 1006.  The Ninth Circuit has recognized that summary evidence

14   "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed

15   in the testimony of the multitude of witnesses."  *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir.

16   1989); *see also Meyers*, 847 F.2d at 1412 (approving the use of a summary witness where the sequence

17   of events was confusing and the chart contributed to the clarity of presentation).  Further, although the

18   underlying materials upon which the summary testimony is based must be "admissible," they need not

19   be actually admitted into evidence.  *See Meyers*, 847 F.2d at 1412.  The foundation for admission of

20   such a summary is simply that the records are voluminous and that in-court examination would be

21   inconvenient.  *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990).  On this basis, the United

22   States will seek to admit the charts into evidence.  Each of the aforementioned charts or exhibits will be

23   produced to counsel for the defendant in advance of trial, with the understanding that revisions may be

24   made during trial, which will be disclosed as soon thereafter to counsel as possible.

25          H.    **Chain of Custody**

26          Evidence regarding the chain of custody concerning an item of seized evidence goes to the

27   weight as opposed to the admissibility of the evidence.  *United States v. Harrington*, 923 F.2d 1371,

28   1374 (9th Cir. 1991).

1    ## I.    Testimony Regarding a Person's Age

2    The government may elicit testimony from Special Agent Schofield and Detective Christie

3    Hirota concerning the apparent age of children depicted in videos of child pornography found on the

4    defendant's electronic devices.  These witnesses' lay opinion testimony concerning the ages of the

5    children depicted is admissible under Federal Rule of Evidence 701, which "permits a lay witness to

6    give opinion testimony as long as the opinion is '(a) rationally based on the perception of the witness

7    and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in

8    issue.'"  *United States v. Yazzie*, 976 F.2d 1252, 1255 (9th Cir. 1992) (quoting Fed. R. Evid. 701).  In

9    *Yazzie*, the Ninth Circuit held that lay opinion testimony regarding a person's age is "particularly

10   appropriate" because, *inter alia*, people "form an opinion of a person's age from a 'combination of

11   circumstances and appearances which cannot be adequately described and presented with the force and

12   clearness as they appear[]' to us."  *Id.* at 1255-1256 (quoting *United States v. Skeet*, 665 F.2d 983, 985

13   (9th Cir. 1982)).

14   ## J.    "Missing Witness" Argument

15   The government believes that there may be witnesses that neither party chooses to call to testify.

16   A prosecutor's comment on a defendant's failure to call a witness does not shift the burden of proof and

17   is therefore permissible so long as there is no comment on the defendant's failure to testify.  *United*

18   *States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000); *see also United States v. Hernandez*, 145 F.3d

19   1433, 1439 (11th Cir. 1998).  "A 'missing witness' instruction is proper only if from all circumstances

20   an inference of unfavorable testimony from an absent witness is natural and reasonable.'"  *United States*

21   *v. Bramble*, 680 F.2d 590, 591 (9th Cir. 1982) (quoting *Burgess v. United States*, 440 F.2d 226, 234

22   (D.C. Cir. 1970)).

23   ## K.    Presentation of Witnesses

24   It is possible that the government may have to call certain witnesses out of order based upon

25   witness availability, or recall witnesses to maintain an orderly presentation.  This should provide for an

26   efficient presentation of the evidence and assist the jury, the Court, and the defendant in understanding

27   the evidence being presented.  Unless otherwise agreed upon by the parties, the government asks that

28   upon the conclusion of each witness's testimony that they not be excused and that they remain subject to

recall.

### L.    Referring to the Defendant's Potential Punishment

On the morning of trial, the government will make a motion that evidence of—and argument referring to—the defendant's potential penalty or punishment be deemed inadmissible.  The Ninth Circuit Model instructions specifically state: "The punishment provided by law for this crime is for the court to decide. You [the jury] may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt."  § 7.4 ("JURY CONSIDERATION OF PUNISHMENT").  The Ninth Circuit Model instructions also instruct jurors that it is their duty to apply the law to the facts "whether you agree with the law or not" and they "must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy."  § 3.1 ("Duties of Jury to Find Facts and Follow Law").  As a general rule, it is inappropriate for a jury to be informed of the consequences of their verdict.  *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991).  Accordingly, the government will move to request that the Court enter an order excluding any reference or argument concerning the potential punishment during any part of the trial.

### M.    Minors Should Be Referred to by Their First Names or Initials During the Proceedings

The Child Victims' and Child Witnesses' Rights Act requires that certain measures be taken to protect the privacy of children who are victims or witnesses in federal criminal proceedings.  Specifically, 18 U.S.C. § 3509(d) requires that information concerning such children be maintained as confidential, and authorizes the Court to issue a protective order "protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child."

Pursuant to § 3509(d), the United States requests that any minors be permitted to testify by first name only or by initials—if either party calls a minor during the course of the trial.  The United States further requests that the Court order all parties to refer to any minors by first name only or by their initials and instruct witnesses before a minor's testimony that the minor's last name and other

1  identifying information should not be mentioned in open court.  Given the confines of § 3509(d), the

2  United States plans to refer to any minors by their first names or by their initials throughout the trial.

3  **N.  <u>Exclusion of Witnesses from the Courtroom</u>**

4  Pursuant to Federal Rule of Evidence 615, on the morning of trial, the government will move to

5  exclude all witnesses from the courtroom until their testimony has been completed.  The government

6  will further move that Special Agent Scott Schofield be designated as the case agent and exempt from

7  the exclusion order.  Fed. R. Evid. 615; *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir.

8  1985).  The government will also request that the Court enter an order stating that no witness or

9  prospective witness, except the government's case agent, be shown or have read to him any transcript of

10  another witness's pretrial or trial testimony or any part thereof, unless the witness qualifies for an

11  exception to the rule of exclusion.

12  Rule 615 provides that, upon request by a party, the Court shall order witnesses excluded so that

13  they cannot hear the testimony of other witnesses.  Rule 615 alters prior practice by removing the matter

14  from the trial judge's discretion and making it a matter of right, at the request of a party.  Advisory

15  Committee Note to Rule 615.  Exceptions to the rule of exclusion are provided for: (1) a party who is a

16  natural person; (2) an officer or employee of a party which is not a natural person designated as its

17  representative by its attorney; or (3) a person whose presence a party shows to be essential to presenting

18  the party's claim or defense (such as a mental health expert); or (4) a person authorized by statute to be

19  present.

20  With respect to transcript testimony, although Rule 615 does not directly address the question of

21  whether showing or reading to a witness transcripts of prior testimony would violate a sequestration

22  order, it is impossible to distinguish oral testimony from transcripts in light of the purpose of the rule.

23  The Supreme Court has addressed this issue in a manner that suggests that it would include the reading

24  of transcripts within the ambit of Rule 615.  *See Sheppard v. Maxwell*, 384 U.S. 333, 359 (1966).

25  **O.  <u>Exclusion of Defendant's Non-Incriminating Hearsay Statements</u>**

26  The United States may elicit testimony from its witnesses as to statements by Cea.  This

27  evidence is admissible against him as a statement of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A).

28

1   For his part, Cea is not permitted to elicit testimony from any witness called by the prosecution or his

2   own witnesses as to his own out-of-court statements.  The Ninth Circuit has repeatedly held that the

3   defendant cannot use the "party-opponent" exception to the hearsay rule to admit his own out-of-court

4   statements.  *See, e.g., United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) ("These statements

5   [by defendant] were inadmissible hearsay; as [defendant] was attempting to introduce them himself, they

6   were not party-opponent admissions, nor did the fact that they were made in a more broadly self-

7   inculpatory confession bring them within the statement-against-interest exception."); *United States v.*

8   *Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming trial court's preclusion of defendant eliciting on

9   cross-examination exculpatory statements given to law enforcement officer); *United States v.*

10   *Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) ("It seems obvious defense counsel wished to place

11   [defendant's denial to police officer] before the jury without subjecting [defendant] to cross-

12   examination, precisely what the hearsay rule forbids.").

13        To the extent Cea tries to use cross-examination of government witnesses to admit exculpatory

14   statements, he is also barred from doing that.  The rule against a defendant eliciting his own hearsay

15   statements through examination of other witnesses includes situations in which the witnesses have

16   testified as to other statements made by the defendant during the same conversation that are inculpatory.

17   *See Ortega*, 203 F.3d at 682 (rejecting argument that defendant should be permitted to introduce own

18   statements because agent testified as to other inculpatory statements made as part of same conversation,

19   and holding rule of completeness does not apply to oral statements).  As the Ninth Circuit has explained,

20   a defendant is not permitted "to use the Confrontation Clause as a means of admitting hearsay testimony

21   through the 'back door' without subjecting himself to cross-examination." *Id.* at 683.  Such is the case

22   here.  If the defendant is permitted to introduce self-exculpatory statements through cross-examination

23   the United States would be prejudiced because it is unable to cross-examine the defendant.

24        **P.   <u>Reverse Jencks</u>**

25        The government informs the Court and the defendant that should the defendant call any

26   witnesses (other than the defendant himself) the government will request all witness statements to which

27   it is entitled under Federal Rule of Criminal Procedure 26.2 that are in the possession, custody, or

28   control of the defendant or his attorney and that relate to the subject matter of the witness's testimony.

1    The defendant's failure to promptly collect and produce these materials to the government may result in

2    unnecessary trial delays and/or unfairly prejudice the government.

3         **Q.    Vouching for Witnesses and Arguing Facts Outside of the Record**

4              While the prosecution generally may not vouch for a witness's credibility, it is equally improper

5    for defense counsel to argue facts outside of the record or use those extra-record facts to vouch for or

6    bolster the credibility of witnesses.  *See United States v. Isaacs*, 565 Fed. App'x 637, 640 (9th Cir. 2014)

7    (holding that district court did not abuse discretion by sustaining government's objections to defense

8    counsel's closing argument premised on facts outside record and requiring counsel to confine his

9    remarks to record); *accord United States v. Gray*, 876 F.2d 1411, 1417 (9th Cir. 1989).

10        **R.    Courtroom Security**

11             The government is not aware of any security risks that necessitate special precautions.

12                        **V.        POSSIBLE DEFENSES**

13             Although the government has requested the defendant's underlying expert reports and

14   information allegedly supporting his notice of a mental defect defense, the defendant has not provided

15   such discovery.  Given that the defendant has not provided that information in accordance with the

16   Federal Rules of Criminal Procedure, the government will move to preclude the defendant from

17   presenting any evidence of such a defense if he attempts to offer it during trial.

18        **VI.    EXCLUSION OF ANY EVIDENCE OFFERED BY THE DEFENDANT**

19             On September 9, 2019, and several subsequent dates thereafter, up to and including, February 28,

20   2020, the government made written requests for reciprocal discovery from the defendant and informed

21   him that it would seek to exclude any evidence that was in the defendant's possession but not disclosed.

22             Rule 16(b) provides that, upon request from the government, the defendant must "permit the

23   government . . . to inspect and to copy or photograph books, papers, documents, data, photographs,

24   tangible objects, buildings or places or copies or portions of any of these items" if the defendant has

25   possession of the items and intends to use them at trial.  Fed. R. Evid. 16(b)(1)(A).  The defendant has a

26   continuing duty to disclose evidence.  Fed. R. Evid. 16(c).  If a party fails to comply with this rule, "the

27   court may . . . prohibit that party from introducing the undisclosed evidence."  Fed. R. Evid. 16(d)(2).

28             To date, the government has received very limited reciprocal discovery pertaining exclusively to

TRIAL BRIEF OF THE UNITED STATES                    31

1  Cea's competency.  As permitted under Federal Rule of Evidence 16(d)(2)(C), the government moves

2  the Court to prohibit the defendant from introducing any other non-disclosed evidence.

3  **VII.    <u>CONCLUSION</u>**

4          The foregoing is a summary of points the government anticipates may arise at trial.  Should any

5  legal issues arise that have not been covered in this trial brief, the government respectfully requests

6  leave to submit further briefing as may be necessary.

7                                                    McGREGOR W. SCOTT
                                                      United States Attorney
8    Dated:  March 2, 2020

9                                                    /s/ ROSANNE L. RUST
                                                      ROSANNE L. RUST
10                                                   CHRISTINA McCALL
                                                      Assistant United States Attorneys
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28