# Aggravating Conduct

## Overview

In the 2012 *Child Pornography Report*, the Commission examined the relationship between child pornography offending and other aggravating sexual conduct. The Commission reviewed social science research regarding other types of sex offending in conjunction with child pornography offending. The Commission also undertook a special coding project to determine the percentage of non-production child pornography offenders who had previously or concurrently committed other sex offenses.[97]

The Commission found that while research had identified some correlation between viewing child pornography and other types of sex offending, most social science research suggested that viewing child pornography alone did not cause offenders to commit additional sex offenses absent other risk factors.[98] The primary risk factors for other sex offending were holding deviant sexual beliefs and anti-sociality.[99] Research also showed that viewing child pornography did not reduce the likelihood of committing other sex offending against children and that offenders who considered their use of child pornography to be preventative against additional sex offending were less likely to take responsibility for their actions.[100]

The Commission then conducted its own data analysis of the prevalence of prior and concurrent criminal sexually dangerous behavior among 1,654 non-production child pornography offenders sentenced in fiscal year 2010.[101] The 2012 *Child Pornography Report* defined "criminal sexually dangerous behavior" as: (1) contact sex offenses (any illegal sexually abusive conduct involving actual or attempted physical contact with a victim, before or concurrent with the non-production child pornography offense); (2) non-contact sex offenses (any illegal sexually abusive conduct not involving actual or attempted physical contact with a victim, such as soliciting a minor online, before or concurrently with the non-production child pornography offense); or (3) prior non-production child pornography offenses.[102] Thus, the Commission only coded an offender's conduct as criminal sexually dangerous behavior if it was illegal under state or federal law.[103] The Commission coded such conduct as criminal sexually dangerous behavior regardless of whether it resulted in a conviction.[104]

In the 2012 *Child Pornography Report*, the Commission found that 35.1 percent of non-production child pornography offenders in fiscal year 2010 engaged in criminal sexually dangerous behavior concurrently or prior to their instant child pornography charge.[105] However, the Commission cautioned that the true prevalence was likely higher because social science research showed that the actual rate of criminal sexually dangerous behavior among child pornography offenders was higher than the known rate.[106]

The Commission also found that the sentencing framework largely did not account for higher rates of criminal sexually dangerous behavior, save for the pattern of activity enhancement in the guidelines and the statutory enhancement for predicate sex offense convictions.[107] Of the offenders with known criminal sexually dangerous behavior histories in fiscal year 2010, 44.2 percent received the guideline or statutory enhancement for a predicate offense.[108] The remaining offenders did not receive either enhancement based on criminal sexually dangerous behavior, typically because the conduct did not constitute the required "pattern of activity" for the guideline enhancement or did not result in a conviction as required for the statutory enhancement.[109] Similarly, the guidelines' Criminal History Category did not account for criminal sexually dangerous behavior in a majority of cases because of the lack of a conviction, age of a conviction, or other requirement under §4A1.2, which provides instructions on the computation of an offender's criminal history.[110]

## Data Collection

In this report, the Commission analyzed fiscal year 2019 cases to identify offender engagement in sexually abusive or exploitative conduct (hereinafter "aggravating conduct") either prior to, or concurrent with, the instant offense. For purposes of this study, aggravating conduct includes the same components as the 2012 *Child Pornography Report*'s definition of criminal sexually dangerous behavior: (1) contact sex offenses; (2) non-contact sex offenses; and (3) prior non-production child pornography offenses. Consistent with the 2012 *Child Pornography Report*, within this broad categorization, the Commission identified aggravating conduct that encompasses not only illegal sexual contact with a victim (*e.g.*, child molestation involving rape or sexual assault), but also non-contact sex offenses (*e.g.*, illegally enticing a minor to engage in sexual conduct), as well as production of child pornography, which itself may involve contact with the victim (*e.g.*, an offender videotaping himself having sexual contact with a minor), and acts that do not involve contact (*e.g.*, an offender soliciting self-produced sexual images of a minor via the internet or a cellular phone, but not engaging in sexual contact with the minor).

In addition to attempted and completed acts involving actual victims, the Commission coded attempted criminal conduct involving perceived (but nonexistent) minors. The Commission reviewed presentence reports that recounted instances in which offenders engaged in a sexually-oriented internet "chat" with undercover law enforcement officers posing as minors. Frequently, such offenders solicited sex from the perceived minors, enticed the perceived minors to self-produce child pornography, or engaged in real-time sexual conduct via webcam (commonly called "cybersex"). If an offender arranged to meet a fictional minor for sexual contact and took affirmative steps to do so, such conduct was classified as an attempted "travel" offense. If

Figure 17.
Aggravating Conduct Among §2G2.2 Offenders
*Fiscal Year 2019*



the offender attempted to entice a perceived minor to engage in sexual conduct outside of the offender's physical presence or sight (*e.g.*, encouraging the minor to engage in mutual masturbation with the offender while the two "chatted" via instant message, email, or over the telephone), such conduct was deemed a non-contact "solicitation" or enticement offense. If an offender requested self-produced sexual images or a video from the fictional minor (to be made in response to the offender's request), such conduct was deemed attempted production of child pornography. If the offender transmitted child pornography, adult pornography, or sexual images of himself or herself to a perceived minor, such conduct was treated as a non-contact offense (*e.g.*, distributing obscenity to a minor or indecent exposure). Consistent with the 2012 *Child Pornography Report*, the Commission coded such conduct as aggravating sexual conduct regardless of whether it resulted in a conviction.

To identify aggravating conduct, the Commission analyzed presentence reports and plea agreements to determine whether the instant offense involved sexually abusive physical conduct, whether pretrial release was revoked for a sex offense or subsequent child pornography offense, and whether there was a criminal history of arrests or convictions for prior sexually abusive conduct or allegations of such conduct. Additionally, the Commission reviewed the Personal History section of the presentence report, which often described other allegations or admissions by the offender of engaging in aggravating sexual conduct.

## Findings

Nearly half (48.0% or 643 offenders) of the 1,340 non-production child pornography offenders in fiscal year 2019 engaged in aggravating conduct, either prior to or concurrently with their instant federal child pornography offense. Furthermore, distribution offenders, the most serious type of non-production child pornography offender under §2G2.2, had the highest prevalence of aggravating conduct at 51.2 percent, followed closely by receipt offenders at 50.0 percent. However, even 43.9 percent of possession offenders, the least serious type of non-production child pornography offender under §2G2.2, engaged in aggravating conduct either prior to or concurrently with their instant federal child pornography offense.

Of the 643 offenders who engaged in aggravating conduct in fiscal year 2019, 296 offenders (46.0%) received a guideline enhancement for pattern of activity or a

Figure 18.
Trend in Aggravating Conduct by §2G2.2 Offenders



statutory enhancement for a predicate offense. An additional 19 of the 643 offenders were also convicted of production of child pornography and faced a 15-year mandatory minimum sentence. Thus, although a substantial portion of the offenders who engaged in aggravating conduct received a guideline or statutory enhancement accounting for that behavior, the guideline and statutory sentencing scheme for non-production child pornography offenses did not directly provide for an increased sentence based on aggravating conduct in more than half of such cases.

Compared to the data analyzed in the 2012 *Child Pornography Report*, the fiscal year 2019 data shows an increase in the prevalence of aggravating conduct among every type of non-production child pornography offense. Significantly, the increase is most pronounced among possession offenders. The rate of aggravating conduct among possession offenders increased by 14.1 percentage points, from 29.8 percent in 2010 to 43.9 percent in 2019. Similarly, the prevalence of aggravating conduct for receipt offenders rose by 13.6 percentage points, from 36.4 percent to 50.0 percent. The prevalence increased slightly for distribution offenders, rising by 4.4 percentage points from 46.8 percent to 51.2 percent.

Table 5 lists the subcategories of aggravating conduct among the 643 offenders who engaged in aggravating conduct in fiscal year 2019. An offender who falls into more than one subcategory (*e.g.*, an offender with a prior rape offense and a separate non-contact solicitation offense) appears more than once; therefore, the total number of aggravating conduct events exceeds the 643 offenders who engaged in aggravating conduct. Among the non-production child pornography offenders, 22.2 percent engaged in two or more types of aggravating conduct.

Almost one-third (29.3%) of the non-production child pornography offenders engaged in a contact sex offense against a minor either prior to, or concurrently with, the instant non-production child pornography offense. Of the 1,340 non-production child pornography offenders, 11.1 percent were convicted of a contact sex offense against a minor. This includes offenders who engaged in a child pornography production offense that included sexual contact. A smaller percentage (6.5%) produced child pornography that did not include sexual contact either prior to, or concurrently with, the instant non-production offense.

Nearly one-fifth (19.8%) of non-production child pornography offenders committed a non-contact sex offense against a minor before or concurrently with the instant offense. Of the non-production offenders, 10.8 percent solicited a minor (either by contacting the minor directly or through communicating with an adult), and 12.8 percent either sent child pornography, adult pornography, or sexual images of himself to a minor, or committed a non-contact sexual offense (*e.g.*, indecent exposure). Separately, 12.9 percent of the offenders were previously convicted of a non-production child pornography offense.

Aggravating conduct involving a sexually abusive contact offense against an adult was comparatively rare among the non-production child pornography offenders. Less than two percent (1.4%) of non-production offenders engaged in such behavior.

Table 5.
Type of Aggravating Conduct Among §2G2.2 Offenders
*Fiscal Year 2019*

| Aggravating Conduct *(Conduct Occurred in Instant or Prior Offense)* | | |
|---|---|---|
| **Total Cases** | | 1,340 |
|  | N | % |
| **Contact Sex Offenses Against a Minor** | 392 | 29.3% |
| *Conviction* | 149 | 11.1% |
| *Revocation* | 2 | 0.2% |
| *Arrest* | 88 | 6.6% |
| *Admission/Allegation* | 207 | 15.5% |
| *Attempted/Travel* | 37 | 2.8% |
| **Non-Contact Child Pornography Production Offenses** | 87 | 6.5% |
| **Non-Contact Sex Offenses Against a Minor** | 265 | 19.8% |
| *Solicitation of a Minor* | 144 | 10.8% |
| *Sent Pornography to Minors* | 93 | 6.9% |
| *Other Non-Contact Sex Offenses* | 88 | 6.6% |
| **Prior Non-Production Child Pornography Offenses** | 173 | 12.9% |
| **Contact Sex Offenses Against an Adult** | 19 | 1.4% |

**Prior Convictions**

When focusing only on an offender's conviction for a sex offense prior to the instant federal non-production child pornography offense—referred to as "precidivism" in the 2012 *Child Pornography Report*—more than one-fifth (20.8%) of the 1,340 non-production child pornography offenders (n = 279) were previously convicted of a sex offense. Of the 1,340 offenders, 9.9 percent (n = 132) had a prior conviction for a contact sex offense; 0.4 percent (n = 5) were convicted of an offense involving production of child pornography, and 11.9 percent (n = 159) were previously convicted of a non-production child pornography offense. An additional 35 offenders (2.6%) were convicted of a non-contact sex offense, such as enticement or solicitation of a minor.

Figure 19.
Average and Median Sentence Length by Offense Behavior
*Fiscal Year 2019*



## The Effect of Child Pornography Community Participation and Aggravating Conduct

### Sentence Length

The analyses above (Figures 16 and 17) show that in fiscal year 2019, over forty percent of non-production child pornography offenders participated in a child pornography community and nearly half of non-production offenders engaged in aggravating conduct prior to, or concurrently with, the instant offense. Although these behaviors are widespread, they are not so prevalent as to prohibit meaningful comparisons among non-production child pornography offenders. Thus, in contrast to the specific offense characteristics, which apply very frequently across all types of non-production child pornography offenders, these behaviors may provide a more effective means of distinguishing offenders based on culpability and dangerousness.

### Sentences Relative to the Guideline Range

The Commission previously identified participation in online child pornography communities and aggravating sexual conduct as factors that should be accounted for in the guidelines and in the sentences imposed on non-production child pornography offenders. Therefore, the Commission examined whether participation in a child pornography community or engaging in aggravating conduct did affect overall sentence length in fiscal year 2019. The Commission also examined whether these behaviors impacted the position of sentences relative to the guideline range for non-production child pornography offenders.